UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 781-690-9895 SERVICED BY AT&T | Case No.  24-mj-19-01-AJ<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Matthew Niciu, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 781-890-9895, the ("TARGET CELL PHONE"), IMSI 310280110513127, subscribed to Serene HULL, with a listed address of 1465 Hooksett Road #U438 in Hooksett, New Hampshire, with an IMSI of 310280110513127, and whose service provider is AT&T ("The PROVIDER"), a wireless telephone service provider headquartered at 208 S. Akard Street, 10th Floor, Dallas TX 75202. The TARGET CELL PHONE is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.

*See* 18 U.S.C. §§ 3121–3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  *See* 18 U.S.C. § 3123(b)(1).

3. I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I also am a "federal law enforcement officer" within the meaning of Rule 41 of the Federal Rules of Criminal Procedure

4. I am a Deputy Sheriff employed by the Rockingham County Sheriff's Office. I am currently a Task Force Officer ("TFO"), assigned to the Federal Bureau of Investigation's ("FBI") New Hampshire Major Offender Task Force ("NHMOTF"). I am tasked with investigating violent criminals, gang members, and significant drug traffickers throughout the state. As part of the NHMOTF, I work alongside law enforcement officers from various local, state, and federal agencies throughout the state of New Hampshire. I am also currently assigned to the Rockingham County Sheriff's Office Investigations Division, specifically the Rockingham County Sheriff's Office Drug Task Force ("RCSODTF").  I have been a law enforcement officer in the State of New Hampshire since 2014, graduating the 166th New Hampshire Police Standards & Training full-time police academy in April of 2015.

5. Throughout my career, I have led and/or been involved with investigations of robberies, thefts, receiving stolen property, fugitives, assaults, threats, drug distribution, illegal possession of firearms, and other crimes. My investigations have included the use of the following investigative techniques: physical surveillance; uniformed and plain clothes patrol and criminal interdiction; the undercover purchases of narcotics; handling of

cooperating sources and witnesses; exploitation of cellular, social media, and Internet Protocol ("IP") based communications data; execution of search and seizure warrants; interviews and interrogations and the execution of arrest warrants.

6. Based on my training, experience, and information provided to me by other law enforcement officers, I am familiar with the modus operandi used by individuals engaged in the violation of various criminal offenses, such as those related to acts of violence, firearms, and controlled substances. For example, I have handled many cooperating sources and witnesses who have provided information to me specifically related to the distribution of controlled substances. Many of these investigations have resulted in the execution of search warrants, arrest warrants, and eventual convictions.

7. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to establish probable cause for the requested warrant and does not set forth all of my knowledge about this matter. All times herein are approximate.

8. Based on the facts set forth in this affidavit, there is probable cause to believe that HULL has violated 21 U.S.C. §§ 841(a) and 846 - Conspiracy to Distribute a Controlled Substance. On January 31, 2024, a federal grand jury returned an indictment against HULL for Conspiracy to Distribute a Controlled Substance and an arrest warrant issued on February 1, 2024. There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting HULL, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4). The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as

defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9. In the fall of 2022, NHMOTF and the New Hampshire State Police Narcotics Investigation Unit ("NIU") began targeting a drug trafficking organization in New Hampshire involving multiple co-conspirators, including HULL. On January 31, 2024, HULL was indicted in the District of New Hampshire for Conspiracy to Distribute a Controlled Substance in violation of §§ 841(a) and 846. An arrest warrant issued for these charges on February 1, 2024.

10. Prior to the indictment, the NHMOTF had conducted several investigative efforts to locate HULL to no avail. Those efforts included but were not limited to; physical surveillance of HULL's last known addresses, police database inquiries, and debriefing of cooperating witnesses. Specifically, investigators went to HULL'S last two known addresses and conducted surveillance. Investigators did not observe her at either. Additionally, investigators conducted police database inquiries and no recent law enforcement contacts were revealed. Investigators also spoke to cooperating witnesses about whether they were aware of HULL'S whereabouts, but no address was identified for her.

11. On October 8, 2023, the Hooksett New Hampshire Police Department made contact with HULL at the Shooter's Outpost in reference to a call for suspicious activity. The Hooksett Police had the TARGET CELL PHONE listed for HULL in their database.

12. On November 12, 2023, the Concord New Hampshire Police Department took a report of a theft of firearms at 13.5 Dakin Street in Concord. The reporting party, Chris Semple,

Case 1:24-mj-00019-AJ   Document 1-1   Filed 02/07/24   Page 5 of 11

identified his ex-roommate, HULL, as the likely suspect for the theft. Semple provided the TARGET CELL PHONE for HULL to the responding officer.

13. On February 1, 2024, Concord Police Detective Rizzi called the TARGET CELL PHONE. Detective Rizzi asked if he was speaking to HULL and the female identified herself as such.

14. For the reasons listed above, there is probable cause to believe that HULL is using the TARGET CELL PHONE and evidence of the TARGET CELL PHONE'S location will likely lead to HULL'S arrest on her active arrest warrant. I know that cell phones are typically carried on the user's person. Because there is an active arrest warrant for HULL, and investigators cannot identify her specific location to execute the warrant, I believe that the requested information associated with the TARGET CELL PHONE will greatly assist the FBI in effecting her arrest. Prospective GPS "pings" will assist the FBI by providing real-time location updates for the TARGET CELL PHONE, which will assist in locating HULL. As soon as HULL has been located and arrested, the FBI will immediately discontinue the use of the requested information on the TARGET CELL PHONE.

15. In my training and experience, I have learned that PROVIDER is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the

5

provider's cell towers. Cell-site data identifies the "cell towers" (*i.e.*, antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (*i.e.*, faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

16. Based on my training and experience, I know that PROVIDER can collect E-911 Phase II data about the location of the TARGET CELL PHONE, including by initiating a signal to determine the location of the TARGET CELL PHONE on PROVIDER's network or with such other reference points as may be reasonably available.

17. Based on my training and experience, I know that PROVIDER can collect cell-site data about the TARGET CELL PHONE. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as PROVIDER typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

**AUTHORIZATION REQUEST**

18. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

19. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the TARGET CELL PHONE would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

20. I further request that the Court direct PROVIDER to disclose to the government any information described in Attachment B that is within the possession, custody, or control of PROVIDER. I also request that the Court direct PROVIDER to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with

PROVIDER's services, including by initiating a signal to determine the location of the TARGET CELL PHONE on PROVIDER's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate PROVIDER for reasonable expenses incurred in furnishing such facilities or assistance.

21. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the TARGET CELL PHONE outside of daytime hours.

22. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

/s/ Matthew Niciu
TFO Matthew Niciu
Federal Bureau of Investigation

Subscribed and sworn to before me telephonically on ___February 7___, 2024

___Andrea K. Johnstone___
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

### **Property to Be Searched**

1. The cellular telephone assigned call number 781-690-9895, **(**the "TARGET CELL PHONE"), IMSI 310280110513127, subscribed to SERENE HULL, 1465 Hooksett Road #U438 in Hooksett, New Hampshire, and whose wireless service provider is AT&T (the "PROVIDER"), a company headquartered at 208 S. Akard Street, Tenth Floor, Dallas Texas, 75202.

2. Records and information associated with the TARGET CELL PHONE that is within the possession, custody, or control of PROVIDER including information about the location of the cellular telephone if it is subsequently assigned a different call number.

**ATTACHMENT B**

**Particular Things to be Seized**

I.   **Information to be Disclosed by the Provider**

All information about the location of the TARGET CELL PHONE described in Attachment A for a period of thirty (30) days, during all times of day and night. "Information about the location of the TARGET CELL PHONE" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of PROVIDER, PROVIDER is required to disclose the Location Information to the government. In addition, PROVIDER must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with PROVIDER's services, including by initiating a signal to determine the location of the TARGET CELL PHONE on PROVIDER's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate PROVIDER for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to Be Seized by the Government

All information described above in Section I that will assist in arresting **HULL,** who was indicted for violating 21 U.S.C. §§ 841(a)(1) and 846 – Conspiracy to Distribute a Controlled Substance on January 31, 2024, is the subject of an arrest warrant issued on January 31, 2024, and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the PROVIDER in order to locate the things particularly described in this Warrant.